# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SUPERIOR CREDIT UNION, INC.
Plaintiff,

Case No. 1:19-cv-073
Dlott, J.
Litkovitz, M.J.

vs.

CUMIS INSURANCE SOCIETY, INC.,
Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Superior Credit Union, Inc. (Superior) brings this action against CUMIS Insurance Society, Inc. (CUMIS) in connection with claims for losses Superior submitted to CUMIS under a financial institution bond policy. Plaintiff brings claims against CUMIS for breach of contract, breach of its good faith obligations, and declaratory judgment. (Doc. 5, Amended Complaint). This matter is before the Court on CUMIS's motion to dismiss plaintiff's claim for breach of its good faith obligations and to strike plaintiff's claim for punitive damages (Doc. 11), plaintiff's opposing memorandum (Doc. 14), and defendant's reply (Doc. 17).[1]

## I. Factual Allegations of the Complaint

Plaintiff is a not-for-profit corporation incorporated under the laws of Ohio and is an Ohio state-chartered credit union conducting business in Ohio. Plaintiff is the successor-in-interest to the former Classic Federal Credit Union ("Classic"). Defendant CUMIS is an Iowa corporation with its principal place of business in Iowa. CUMIS sells insurance products and is authorized by the Ohio Department of Insurance to transact property and casualty insurance business in Ohio. Plaintiff brings this lawsuit under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 5, ¶¶ 1-8, 10).

---

[1] CUMIS does not challenge the adequacy of plaintiff's claims for breach of contract or declaratory judgment as pled. (Doc. 11).

CUMIS issued a fidelity bond coverage policy agreement ("Bond") to Classic that insured Classic against certain losses, including losses caused by an employee's failure to faithfully perform their trust. The Bond defines "Failure to Faithfully Perform His/Her Trust" for purposes of the contract as "acting in conscious disregard of your established and enforced share or deposit policies or that portion of your established and enforced lending policy which sets out the parameters which must be met in order for a 'loan' to be approved."[2] Classic was covered under the Bond for losses caused by its employees' lack of faithful performance in the maximum amount of $1,500,000 less a $5,000 deductible. (*Id.*, ¶¶ 12-14).

In late 2013, Classic implemented a lending program under which a borrower with limited, derogatory, or no credit could qualify for a loan for the purchase of a used vehicle. The loans were conditioned on the vehicle having a Global Positioning Satellite (GPS) device mounted on the engine block (GPS Program). The GPS device served to (1) alert a borrower after a required loan payment was not timely made, and (2) if the delinquent loan was not brought current, render the vehicle inoperable until the overdue loan payment was made. Before implementing the GPS Program, Classic enacted specific lending policies designed to mitigate risk associated with GPS Program loans and, in turn, protect Classic (GPS Program Lending Policy). All loans originated under the GPS Program were to be approved only in compliance with the credit union's established and enforced GPS Program Lending Policy. (*Id.*, ¶¶ 15-18).

While the Bond was in effect, two former Classic employees, Jason Radachi and Kyle Norsworthy (Claim Principals), were loan officers with authority to approve loans in accordance with Classic's established and enforced lending policies. Plaintiff claims that the two "failed to faithfully perform their duties," and showed "conscious disregard" for the credit union's

---

[2] This type of coverage is also commonly known as "lack of faithful performance" coverage. (Doc. 5, ¶ 13).

2

"established and enforced GPS Program Lending Policy" by approving loans to borrowers in violation of the policy. Plaintiff claims that it suffered damages in excess of $650,000 as a result. (*Id.*, ¶¶ 19-21).

Classic filed its fidelity bond claim with CUMIS on December 21, 2017, by submitting a Proof of Loss that complied with all conditions of the Bond. Classic sought fidelity insurance coverage for 127 GPS Program loans which it concluded had been approved by the Claim Principals in "conscious disregard of the credit union's established and enforced GPS Program Lending Policy." Classic claimed a loss of $720,490.53, plus $25,000 in audit expense coverage, under the Bond. (*Id.*, ¶¶ 22-24).

CUMIS conducted a claim investigation in February 2018 during which its retained counsel interviewed members of Classic's Board of Directors (including Classic's Chairperson and Vice-Chairperson), Classic's Supervisory Committee Chairperson, several Classic employees, and Classic's interim CEO/Manager. Each Board member independently confirmed in their interview that they had no knowledge of a potential loss insured by the Bond until a Board Meeting on or about February 3, 2017, at which facts relating to a potential loss were first discussed. Two Classic loan officers who were not named as Claim Principals in the Proof of Loss were interviewed by Superior's retained counsel and independently confirmed that: (1) they received copies of Classic's GPS Program Lending Policy; (2) copies of the GPS Program Lending Policy and Classic's other lending policies were available on its shared computer drive; and (3) the loan officers were aware of the parameters of the GPS Program Lending Policy. (*Id.*, ¶¶ 25-27).

On April 13, 2018, Classic filed a Supplemental Proof of Loss, seeking additional fidelity insurance coverage of $40,258.76 for 15 non-GPS Program loans which the Claim Principals had

3

approved for GPS Program borrowers in violation of Classic's lending policies. (*Id.*, ¶ 28). Following its investigation, on May 21, 2018, CUMIS offered to pay Classic $214,012.11 as reimbursement for its covered losses. Those losses consisted of 32 GPS Program loan losses and 15 non-GPS Program loan losses (47 total loans) underwritten by the Claim Principals in violation of the GPS Program Lending Policy and covered under the lack of faithful performance provision of the CUMIS Bond. Plaintiff wrote to defendant on June 21, 2018 and asked it to explain why only 32 GPS Program loans were covered under the lack of faithful performance provision of the CUMIS Bond when, in the credit union's view, many other GPS Program loans for which it claimed losses involved the same or worse GPS Program underwriting violations by the Claim Principals. Defendant subsequently determined that six additional GPS Program loan losses were covered under the lack of faithful performance provision of the CUMIS Bond and increased its offer to $262,542.32 based on losses for 53 loans (38 GPS Program loans and 15 non-GPS Program loans). CUMIS informed plaintiff that the offer would expire after 24 hours if not accepted. (*Id.*, ¶¶ 29-32).

In July 2018, plaintiff twice asked CUMIS to identify the six additional GPS Program loans which defendant had acknowledged represented covered losses, which CUMIS declined to do. Plaintiff wrote to CUMIS again on September 11, 2018, and asked CUMIS to explain why only 53 loans were covered under the lack of faithful performance provision of the Bond when many other loans for which plaintiff claimed losses contained the same or worse GPS Program underwriting violations by the Claim Principals. Defendant never provided an explanation. On September 24, 2018, CUMIS asked plaintiff to delay filing a threatened lawsuit until after October 31, 2018, so that CUMIS could calculate the deduction for income realized from the GPS Program loans included in the July 2018 offer of $262,542.32. Plaintiff did so. On October

4

4, 2018, CUMIS acknowledged that plaintiff was entitled to $264,691.97 for losses covered under the lack of faithful performance provision of the CUMIS Bond, and CUMIS provided plaintiff with the list of 53 loans it deemed payable under its lack of faithful performance coverage. CUMIS subsequently informed plaintiff in a letter dated December 18, 2018, that it would not increase its offer and that the extent of the credit union's losses was immaterial. Plaintiff claims that CUMIS has refused to issue payment for all the covered losses CUMIS has already acknowledged were covered under the lack of faithful performance provision of the CUMIS Bond, and CUMIS and has not offered any explanation for its coverage decisions despite plaintiff's repeated requests. (*Id.*, ¶¶ 33-38).

Based on these allegations, plaintiff brings a claim for breach of contract, alleging that CUMIS has refused to pay plaintiff a reasonable amount as compensation for its covered losses. (*Id.*, Count I, ¶¶ 39-45). Plaintiff also brings a claim for bad faith, claiming that CUMIS breached its duties of good faith and fair dealing owed to plaintiff under the Bond. (*Id.*, Count II). Plaintiff alleges that CUMIS breached it duties by: (1) failing to carefully consider plaintiff's insurance claim and agreeing to pay only a portion of the claim "based on [] reimbursement for 53 loans" without informing plaintiff why several identical or similar GPS Program loans submitted with the claim were excluded from coverage; (2) offering unexplained, inconsistent, and misleading conclusions in its claim analysis which solely benefitted CUMIS to plaintiff's detriment (e.g., covering only some of the claimed loan losses where the sole GPS Program Lending Policy violation was the failure to obtain a required down payment); and (3) placing CUMIS's interest ahead of its insured's interest by failing to consider facts favorable to the insured, including that the Claim Principals earned $30,000.00 in commissions by approving

5

GPS Program loans and by assigning improper valuations to the vehicles to artificially inflate the amounts loaned. (*Id.*, ¶ 49).

Plaintiff also claims that CUMIS engaged in "intentional, malicious and extreme conduct, [and exhibited] an utter indifference to issuing payment" admittedly owed to plaintiff by finding that the Board discovered the Claim Principals' misconduct on March 16, 2016, in contravention of each former Board member's representation to CUMIS that the alleged misconduct was first discovered in February 2017. (*Id.*, ¶¶ 50-51). Plaintiff further contends that CUMIS sought to leverage the pending insurance claim by contacting plaintiff on September 24, 2018 and October 2, 2018, to attempt to schedule a meeting to sell plaintiff insurance and investment products; plaintiff informed CUMIS it would not meet with CUMIS representatives and that its reputation with plaintiff's staff and Board was "not good"; and CUMIS thereafter sent plaintiff a letter dated November 26, 2018, disavowing its earlier determination that 53 GPS Program loans were covered by stating it had not yet found the coverage requirements satisfied, and a risky lending decision was not in and of itself a covered loss under the Bond. (*Id.*, ¶¶ 56-60).

Plaintiff further alleges that CUMIS acted in bad faith and violated Ohio insurance law by failing to "promptly settle" claimed items of loss under its policy after liability had "become reasonably clear," in part for the purpose of "influenc[ing] settlements of other loan loss items of claim"; failing to affirm or deny coverage within a reasonable time period; failing to act reasonably and promptly on communications regarding claims arising under the Bond; delaying the payment of claims by requiring plaintiff to submit irrelevant and duplicative information and seeking to re-interview credit union volunteers for the sole purpose of harassing them and bargaining for an unfair settlement; and acting without a reasonable justification and in an arbitrary and capricious manner. (*Id.*, ¶¶ 61-70).

6

As relief, plaintiff seeks a declaratory judgment under the Ohio Declaratory Judgment Act, Ohio Rev. Code § 2721.04, regarding defendant's breach of contractual duties. (*Id.*, Count III, ¶¶ 71-73). Plaintiff also seeks compensatory and punitive damages, in addition to other relief.

## II. Defendant CUMIS's motion to dismiss plaintiff's bad faith claim

### A. CUMIS's motion to dismiss

Defendant CUMIS moves to dismiss plaintiff's claim for breach of its obligation of good faith on the ground it fails to state a claim for relief. (Doc. 11). CUMIS argues that plaintiff has not made any factual allegations to support its claim that CUMIS acted in bad faith by (1) arbitrarily admitting some losses were covered while denying coverage for similar losses, and (2) refusing to provide an explanation for its coverage position. (*Id.* at 5). CUMIS contends that the parties' written communications, which are referenced in the complaint and which it has attached to its motion, show that CUMIS explained its position on coverage in detail, never accepted coverage, and extended multiple reasonable settlement offers to plaintiff, which were rejected. (*Id.*; Exhs. B, C, D). CUMIS argues that the Court can consider those communications in connection with the allegations of the complaint.[3] (*Id.* at 13, 7, n.1, quoting *Anderson v. County of Hamilton*, 780 F. Supp. 2d 635, 642 (S.D. Ohio 2011)). CUMIS contends that considered together, the complaint and documents referenced in it allege no facts that are "consistent with 'a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud'" which "embraces actual intent

---

[3] In its motion, CUMIS suggests that the Court can take "judicial[] notice[]" of the parties' "chain of communications" (Doc. 11 at 13), which plaintiff construes as a request for the Court to take "judicial notice" of adjudicated facts under Fed. R. Evid. 201. (Doc. 14 at 18). CUMIS has clarified in its reply that it is not asking the Court to take judicial notice of the communications but is actually asserting that the documents attached to its motion are part of the pleadings because plaintiff referenced them in its complaint and they are central to plaintiff's claims. (Doc. 17 at 8).

7

to mislead or deceive another," as opposed to merely "bad judgment or ignorance." (*Id.* at 13). CUMIS argues that plaintiff's claim for bad faith must therefore be dismissed.

In response, plaintiff argues it has pled facts which, if accepted as true, demonstrate bad faith under Ohio law. (*Id.* at 6). Plaintiff alleges that the exhibits CUMIS has attached to its motion to dismiss contain misrepresentations and contested material facts. (*Id.*). Plaintiff argues the documents therefore cannot be considered in conjunction with CUMIS's motion to dismiss. (*Id.* at 6, 18-19, quoting *Mediacom S.E. LLC v. BellSouth Telecomm., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) ("While documents 'integral to the complaint may be relied upon, even if [they are] not attached or incorporated by reference, [i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") (internal quotations and citations omitted)).

In its reply memorandum, CUMIS contends that the allegations plaintiff has made in support of its claim for bad faith are actually legal conclusions couched as factual allegations. (Doc. 17). CUMIS further argues that plaintiff has mischaracterized the actual documents which set forth the insurer's true coverage position. CUMIS contends it has submitted "undisputed evidence" in the form of three written letters which show it "did not 'accept coverage' for any part of plaintiff's claim," but instead it "offered to *settle* plaintiff's noncovered claim." (*Id.* at 4) (emphasis in the original). CUMIS argues that the Court is bound to adopt its version of the facts as supported by the letters and find based on these documents that the true facts are precisely the opposite of what plaintiff alleges in the complaint and do not support plaintiff's bad faith claim.

8

## B. Rule 12(b)(6) standard

In ruling on a Rule 12(b)(6) motion, the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555, 570). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). The Court need not accept as true the plaintiff's legal conclusions and "unwarranted factual inferences." *Gean v. Hattaway*, 330 F.3d 758, 765 (6th Cir. 2003).

The Court is permitted to consider materials attached to the complaint when ruling on a motion to dismiss. *Arauz v. Bell*, 307 F. App'x 923, 925 (6th Cir. 2009) (citing *Talal v. White*, 403 F.3d 423, 427 (6th Cir. 2005); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (permitting an appellate court reviewing a Rule 12(b)(6) dismissal to consider materials attached to a complaint)). The court may consider "(1) any documents attached to, incorporated by, or

referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Anderson*, 780 F. Supp. 2d at 642 (citing *Smith v. Bd. of Trs. Lakeland Cmty. Coll.*, 746 F. Supp. 2d 877, 889-90 (N.D. Ohio 2010)). *See also Amini*, 259 F.3d at 502.

### C. Breach of the duty of good faith

An insurer has a legal duty "to act in good faith in the handling and payment of the claims of its insured." *Great West. Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955, 979 (S.D. Ohio 2009) (citing *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1316 (Ohio 1983)). "The existence of a duty of good faith between an insurer and an insured is based on the fiduciary duty imposed upon insurers." *Penton Media, Inc. v. Affiliated FM Ins. Co.*, 245 F. App'x 495, 501 (6th Cir. 2007) (quoting *State Farm Mut. Auto. Ins. Co. v. Reinhart*, 683 N.E.2d 843, 845 (Ohio App. 1996)). A breach of the duty gives rise to a claim in tort against the insured. *Great West*, 605 F. Supp. 2d at 979 (citing *Hoskins*, 452 N.E.2d at 1316).

Intent is "not an element of a bad faith tort." *Yates v. Allstate Ins. Co.*, No. 3:10-cv-438, 2012 WL 1902464, at *3 (S.D. Ohio May 25, 2012) (quoting *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397 (Ohio 1994); *Poneris v. Pennsylvania Life Ins. Co.*, No. 1:06-cv-254, 2007 WL 3047232, at *2 (S.D. Ohio Oct. 18, 2007)). The applicable "standard for determining bad faith is simply 'reasonable justification'[.]" *Yates*, 2012 WL 1902464, at *3 (quoting *Zoppo*, 644 N.E.2d 397). "'[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.'" *Zoppo*, 644 N.E.2d at 400. *See also Hoskins*, 452 N.E.2d at 1320 (the insurer's conduct must be based on circumstances that provide a "reasonable justification" for it;

although the "[m]ere refusal to pay insurance is not, in itself, conclusive of bad faith, . . . when an insure[r] insists that it was justified in refusing to pay a claim of its insured because it believed there was no coverage of the claim," the insurer's "belief may not be an arbitrary or capricious one"); *Penton Media,* 245 F. App'x at 501 (an insurer breaches its duty of good faith "when it refuses to pay or settle a claim for an arbitrary or capricious reason" and under circumstances that do not provide a reasonable justification for its actions) (quoting *Reinhart,* 683 N.E.2d at 845). *See also Great West,* 605 F. Supp. 2d at 979-80 ("An insurer lacks reasonable justification when it denies the claim in an arbitrary or capricious manner."). An insurer may be reasonably justified in denying a claim when "the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim." *Big Lots Stores, Inc. v. Am. Guarantee & Liab. Ins. Co.,* 240 F. Supp. 3d 725, 739 (S.D. Ohio 2017) (quoting *Tokles & Son, Inc. v. Midwestern Indemn. Co.,* 605 N.E.2d 936, 943 (Ohio 1992)). *See also Barbour v. Household Life Ins. Co.,* No. 1:11-cv-110, 2012 WL 1109993, at *5 (N.D. Ohio Apr. 2, 2012) (a claim denial is reasonably justified if it is "fairly debatable") (quoting *Corbo Properties, Ltd. v. Seneca Ins. Co., Inc.,* 771 F. Supp. 2d 877, 880 (N.D. Ohio 2011)).

"[P]erforming a cursory investigation and ignoring information that would tend to support the insured's claim can constitute bad faith." *Great West,* 605 F. Supp. 2d at 980 (citing *Zoppo,* 644 N.E.2d at 400). *See also Helwig v. Allstate Ins. Co.,* No. 2:13-cv-331, 2015 WL 10990266, at *5 (S.D. Ohio Jan. 28, 2015). The insurer "cannot merely conduct a cursory investigation and fail to interview key witnesses and look into key facts in order to prevent uncovering evidence that would support coverage." *Great West,* 605 F. Supp. 2d at 981. A bad faith claim may be stated where the plaintiff alleges that the insurer "acted in bad faith by failing

11

to investigate his claim, failing to apply provisions of [the] policy, and failing to interpret the policy in [the insured's] favor. *Poneris*, 2007 WL 3047232, at *3. Even if a claim is ultimately paid, an insurer's "'foot-dragging' in handling and evaluating the claim may support a bad-faith cause of action." *McNair v. State Farm Fire & Cas. Co.*, No. L-13-1163, 2013 WL 6795616, *5 (Ohio App. 2013) (quoting *Drouard v. United Servs. Auto. Assn.*, No. L-06-1275, 2007 WL 707532, *2 (Ohio App. 2007)).

### D. Plaintiff has stated a claim for breach of the duty of good faith

The amended complaint alleges sufficient facts to support plaintiff's claim that CUMIS breached its duty of good faith in the handling and payment of its insured's claim under the Bond. (*See* Doc. 5). In support of its bad faith claim, plaintiff alleges that CUMIS acted arbitrarily and without reasonable justification in several ways. Plaintiff alleges that CUMIS offered unexplained, inconsistent, and misleading conclusions in its claim analysis, which benefitted CUMIS to plaintiff's detriment. Plaintiff alleges that CUMIS covered only some of the claim losses it submitted when others suffered from the same or more serious deficiencies. Plaintiff further alleges that despite evidence that unequivocally established February 2017 as the date the Board discovered the Claim Principals' misconduct, CUMIS established an arbitrary discovery date of March 2016 and denied claim losses on that basis. Plaintiff also alleges that CUMIS failed to adequately investigate plaintiff's claim and did not take into account material facts, including (1) the $30,000 in commissions that the Claim Principals allegedly earned by approving GPS Program loans, and (2) the fact that an improper and inapplicable valuation method was used to inflate the amounts loaned on the vehicles. In addition, plaintiff alleges that CUMIS improperly sought to leverage the pending insurance claim after plaintiff refused to meet with CUMIS representatives to discuss buying additional insurance products and informed

CUMIS that its reputation with the plaintiff was "not good." Plaintiff asserts that CUMIS failed to "promptly settle loan loss items of claim under its policy where liability has become reasonably clear," including "in order to influence settlements of other loan loss items of claim." Plaintiff alleges that CUMIS failed to affirm or deny coverage within a reasonable time period; failed to act reasonably and promptly on communications regarding claims arising under the Bond; and delayed the payment of claims by requiring plaintiff to submit irrelevant and duplicative information and seeking to re-interview credit union volunteers for the sole purpose of harassing them and bargaining for an unfair settlement. (*Id.* at ¶¶ 47-70).

The facts alleged in the complaint go beyond a formulaic recitation of the elements of plaintiff's bad faith claim and give CUMIS fair notice of the claim and the grounds upon which it rests. *Erickson*, 551 U.S. at 93. Plaintiff has adequately pled that CUMIS breached its obligation to act in good faith in investigating and handling payment of plaintiff's claim.

CUMIS nonetheless argues that plaintiff's allegations cannot establish its bad faith claim, largely because the allegations are refuted by the written communications CUMIS has attached to its motion to dismiss. (Docs. 11, Exhs. B, C, D). These communications consist of three letters. The first is a letter from CUMIS to plaintiff dated May 21, 2018. (*Id.*, Exh. B). In the letter, CUMIS established the date of discovery of loss as no later than March 16, 2016. CUMIS offered to settle plaintiff's claim for $214,012.11 based on a full release of the claim and the following description of how the total was calculated: "32 loans issued prior to March 16, 2016, with egregious underwriting issues," which totaled $153,753.35; "15 loans to Program borrowers that hadn't made the required 12 consecutive monthly payments," which totaled $40,258.76; "Audit Expenses" of $25,000; and a "Faithful Performance deductible" in the amount of $5,000. The second is a letter dated October 4, 2018, which CUMIS wrote in response to a letter plaintiff

13

had sent on September 11, 2018, and which confirmed the details of a September 28, 2018 conversation with plaintiff. (*Id.*, Exh. C). In the letter, CUMIS offered to settle plaintiff's claim for $264,691.97 based on a full release of the claim and the following description of how the total was calculated: "38 loans we previously discussed," with a claimed loss total of $204,433.21; "15 loans included in the credit union's supplemental claim," with a claimed loss total of $40,258.76; an "Audit Expense limit" claimed loss of $25,000; and a "Faithful Performance deductible" in the amount of $5,000. (*Id.*). The third letter is dated December 18, 2018, and CUMIS indicated that the letter supplemented a November 26, 2018 letter which was an interim response to plaintiff's November 11, 14, and 21, 2018 communications. (*Id.*, Exh. D). CUMIS stated in the letter that it "remains willing to settle the subject claim for $264,691.97," but the sum was "simply a proposal to settle what we believe to be a noncovered claim based upon the evidence that you have provided to date."[4]

CUMIS argues that these letters belie each of plaintiff's "contradictory factual assertions." (Doc. 17 at 8). CUMIS contends that contrary to plaintiff's allegations, the letters show that: (1) CUMIS consistently denied coverage for plaintiff's entire claim rather than arbitrarily admitting some losses were covered while denying others; and (2) CUMIS did not refuse to explain its coverage position but actually explained the reasons for its claim decision in detail. (*Id.* at 9, citing Doc. 5, ¶¶ 46-70). CUMIS alleges that the letters attached to its motion to dismiss are "a proposal to settle" a claim, which CUMIS believed was not covered under the Bond, and not a "confirmation of coverage." (*Id.* at 6-7). CUMIS acknowledges that plaintiff

---

[4] Plaintiff references two additional letters in the complaint. The first is a letter dated June 21, 2018, in which plaintiff purportedly asked CUMIS to explain why it had "decided only 32 GPS Program loans were covered . . . under the CUMIS Bond when many other GPS Program loans approved by the Claim Principals and submitted to [CUMIS] contained the exact same, or worse, GPS Program underwriting violations." (Doc. 5, ¶ 30). The second is a letter dated November 26, 2018, in which CUMIS allegedly "disavowed its earlier coverage determination that coverage existed for 53 GPS Program loans." (*Id.*, ¶ 58). CUMIS has not attached either letter to its motion to dismiss.

14

takes issue with the discovery of loss date it established, but CUMIS argues it is obvious from the letters that "the loss date was not the focus of CUMIS's denial" and that CUMIS actually denied coverage because the losses "resulted from poor lending decisions instead of employee dishonesty." (*Id.* at 9, n.3). CUMIS argues that if the Court accepts as true plaintiff's "conclusory allegations (that CUMIS accepted coverage)" and credits those allegations "over the actual documents before the Court (showing it did not)," then the Court should deny the motion to dismiss. (*Id.* at 8). CUMIS argues, however, that the Court should not accept plaintiff's allegations and should dismiss the bad faith claim because the documents CUMIS has submitted contradict the allegations on which plaintiff has staked its claim; i.e., that CUMIS arbitrarily confirmed coverage for some losses while denying coverage for others. CUMIS argues that to the extent plaintiff intends to claim that CUMIS acted in bad faith by issuing denial letters which include misstatements and representations, plaintiff should file an amended complaint to allege this rather than ignore the letters or construe them to mean the opposite of what they state. (*Id.* at 9-10).

The letters CUMIS has submitted are referenced in the complaint and are properly considered part of the pleadings for purposes of CUMIS's motion to dismiss. *See Amini*, 259 F.3d at 502. However, even where an exhibit is considered part of the pleadings, "it is not always appropriate to assume everything in an exhibit is true." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441-42 (6th Cir. 2012). *See also Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008). That caveat applies here. Plaintiff alleges that the letters CUMIS has attached to its motion contain misrepresentations regarding CUMIS's coverage position. The Court cannot resolve the parties' disputes about the contents and meaning of the letters and determine the accuracy of the representations in the letters in connection with a Rule 12(b)(6) motion. This is

15

particularly true because according to the letters and plaintiff's allegations, the parties communicated with each other on several more occasions and exchanged additional letters regarding plaintiff's claim. Plaintiff's claim against CUMIS for breach of its duty of good faith should not be decided at the pleading stage based on only some of the many communications between the parties regarding plaintiff's claim for loan losses under the Bond.

Further, the letters CUMIS has submitted do not, standing alone, refute plaintiff's allegations of misconduct and demonstrate that CUMIS acted in good faith in investigating and handling plaintiff's claim. For instance, the October 4, 2018 letter specifies the claimed loan losses (38 previously discussed loans and 15 loans included in the credit union's supplemental claim) and the associated amounts CUMIS agreed to pay plaintiff, and the letter indicates those specific loans are set out in an attached table. (Doc. 11, Exh. C). CUMIS has not shown that because it characterized the payment it offered for these loan losses as a "settlement offer," rather than payment for a "covered" loss, plaintiff cannot prove that CUMIS acted in bad faith by agreeing to reimburse plaintiff for only these specific loan losses and no others.

Moreover, plaintiff's claim of bad faith is premised on more than its allegation that CUMIS arbitrarily agreed that some GPS Program losses were covered under the Bond while arbitrarily denying coverage for similar losses. Plaintiff claims that CUMIS breached its duty of good faith based on numerous allegations of misconduct that occurred in the investigation and payment of plaintiff's claim as discussed above. *See supra*, pp. 12-13. Plaintiff's allegations, considered together with the letters CUMIS has attached to its motion, are sufficient to withstand CUMIS's motion to dismiss the claim for breach of the duty of good faith.

Plaintiff's claim for breach of the duty of good faith should not be dismissed for failure to state a claim for relief.

## III. Defendant CUMIS's motion to strike plaintiff's claim for punitive damages

CUMIS moves to strike plaintiff's claim for punitive damages under Fed. R. Civ. P. 12(f) on the ground plaintiff has not alleged any facts to show "actual malice or flagrant disregard for plaintiff's rights." (Doc. 11 at 6, 13-14). CUMIS argues that plaintiff has pled facts which show only that there was a dispute about insurance coverage, and nothing more. (*Id.* at 14). Plaintiff argues in response that Rule 12(f) should be applied sparingly and only when justice requires. (Doc. 14 at 20-21). Plaintiff contends that CUMIS has not alleged facts to show that the Court should apply the Rule under the circumstances presented here. CUMIS asserts in its reply that plaintiff has made only conclusory allegations to support its punitive damages claims, which are insufficient. (Doc. 17 at 10).

Rule 12(f) provides that on motion by a party, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Whether to apply the rule is in the trial judge's discretion. *Watkins & Son Pet Supplies v. Iams Co.*, 107 F. Supp. 2d 883, 887 (S.D. Ohio 1999), *aff'd,* 254 F.3d 607 (6th Cir. 2001). "Because striking a portion of a pleading is a drastic remedy, such motions are generally viewed with disfavor and are rarely granted." *Id. See also Miller v. U.S. Bank, N.A.*, No. 3:17-cv-55, 2018 WL 466426, at *3 (S.D. Ohio Jan. 18, 2018) (Report and Recommendation), *adopted,* 2018 WL 708385 (S.D. Ohio Feb. 2, 2018). In applying Rule 12(f), the court should consider "(1) whether the material has any possible relation to the controversy and (2) whether either party would be prejudiced by allowing the pleading to stand as-is." *Miller,* 2018 WL 466426, at *3 (quoting *Amerine v. Ocwen Loan Servicing LLC*, No. 2:14-cv-15, 2015 WL 10906068, at *1 (S.D. Ohio Mar. 31, 2015)).

CUMIS has not shown that plaintiff's claim for punitive damages should be stricken pursuant to Rule 12(f). Plaintiff's claim for punitive damages is related to the parties' dispute, and CUMIS has made no allegations to suggest that it would be prejudiced if the punitive damages claim were not stricken from the complaint. The Court should therefore exercise its discretion to deny plaintiff's motion to strike the punitive damages claim under Rule 12(f).

**IT IS THEREFORE RECOMMENDED THAT:**

Defendant's CUMIS's motion to dismiss plaintiff's claim for breach of the duty of good faith and to strike plaintiff's punitive damages claim (Doc. 11) be **DENIED**

Date: 10/28/19

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTICT OF OHIO
# WESTERN DIVISION

SUPERIOR CREDIT UNION, INC.,            Case No. 1:19-cv-073
     Plaintiff,                                    Dlott, J.
                                                        Litkovitz, M.J.

vs.

CUMIS INSURANCE SOCIETY, INC.,
     Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).